UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.        )<br>)<br>ROGER G. STILLWELL,  )<br>)<br>  Defendant.    )<br>_____) | Criminal No. 06-300 (D.D.C.)<br><br>(Sentencing Date: 01/09/07)<br><br>(Magistrate Judge Alan Kaye) |

**DEFENDANT ROGER G. STILLWELL'S MEMORANDUM
<u>IN AID OF SENTENCING</u>**

Defendant Roger G. Stillwell, through counsel, respectfully submits this memorandum in anticipation of the January 9, 2007 sentencing hearing in this matter. Mr. Stillwell is before the Court on his plea to 18 U.S.C. § 1018 (Class A Misdemeanor) which contains a maximum sentence of up to one year in confinement and/or a $100,000 fine and a mandatory special assessment of $25.

The Presentence Investigation Report ("PSI Report"), prepared by U.S. Probation Officer Elizabeth Suarez, properly sets the total offense level at 4, with a Criminal History Category I and a resulting guideline range of 0–6 months, under the advisory U.S. Sentencing Guidelines ("USSG"). Mr. Stillwell is eligible for probation because the advisory guidelines score of 4 places him within Zone A of the USSG sentencing table. USSG 5B1.1(a)(1). In addition, if the Court imposes a term of probation, the term shall be no more than three years since the total offense level is less than 6. USSG 5B1.2(a)(2).

The defendant submits that a term of probation of no more than six months would provide adequate supervision in this case, and is well supported on the basis of all applicable considerations under 18 U.S.C. § 3553. Counsel for the United States has informed counsel for Mr. Stillwell that they do not contest this recommendation and will leave the determination to the

discretion of this Court.

## I. Background

### A. Personal History of Roger Stillwell

The PSI Report sets forth succinctly Mr. Stillwell's relevant personal and professional background. This memorandum incorporates that information by reference and will not replicate it. In short, Mr. Stillwell has lived an honest adult life marked by hard work, including approximately 40 years of service for the United States Government and the Northern Mariana Islands (hereafter "CNMI"), discipline and compassion. By applying his intelligence, work ethic and persistence, Mr. Stillwell has represented the interests of the CNMI in various capacities since 1969. Through all of his work experiences, he has had an unblemished record.

From 2001 until August 2006[1], Mr. Stillwell worked in the Department of Interior's Office of Insular Affairs ("OIA") as a Desk Officer responsible for oversight of federal issues in the CNMI. This was a full time federal position. During his employment with the Department of Interior, Mr. Stillwell was awarded several cash awards for meritorious and superior service, maintained an excellent work relationship with his superiors and peers, and enjoyed a reputation for quality work and having considerable professional experience in Island issues.

Mr. Stillwell's main duties included the daily monitoring of federal activities in the CNMI, the drafting of press releases and staff briefing materials, responding to Congressional, federal government and general public inquiries and media relations. At no time did Mr. Stillwell have a top secret clearance, access to classified information, or sit in on classified meetings. While he frequently wrote briefing statements, he rarely made policy

---

[1] Upon the entry of his guilty plea on August 11, 2006, Mr. Stillwell was asked by the Department of Interior to leave his position.

recommendations; policy making for the CNMI by the OIA was reserved for the OIA Director.

Predating his employment at the Department of Interior, Mr. Stillwell forged a personal relationship with Jack Abramoff that would prove to be his undoing. Mr. Stillwell first met Mr. Abramoff in 1995, when Mr. Stillwell was working for the Governor of the CNMI as their Washington, D.C. consultant. In 1995, then CNMI Governor Froilan Tenorio hired Mr. Abramoff to prevent passage of legislation that would strip the CNMI of control over local immigration and the setting of minimum wage rates. Mr. Stillwell was instructed to work with Mr. Abramoff to ensure that he was familiar with the background of these complex issues. Mr. Abramoff succeeded in blocking passage of the legislation. At no time did Mr. Stillwell or Mr. Abramoff work together on any other CNMI issue.[2]

While working for the CNMI, the two men and their families developed a personal friendship. The Stillwell family shared Passover dinner at the Abramoff home and attended Mr. Abramoff's son's Bar Mitzvah. In addition, in the years before Mr. Stillwell began to work for the Department of Interior, Mr. Abramoff offered sporting and concert tickets to the Stillwell family. In each instance, Mr. Stillwell offered to pay for the tickets but Mr. Abramoff said he had unused seats and was pleased to offer them to a friend.

Mr. Stillwell was not related to Mr. Abramoff's lobbying firm or lobbying efforts. Mr. Stillwell played no role in Mr. Abramoff's dealings with Indian Tribe casinos. As described above, Mr. Stillwell, in his employment as Desk Officer for CNMI, was not in a position to influence or determine official action; rather, Mr. Stillwell monitored the CNMI and processed

---

[2] However, after his employment with the CNMI was completed, Mr. Stillwell believed that Mr. Abramoff remained interested in CNMI issues. Mr. Stillwell would occasionally send Mr. Abramoff, and other individuals Mr. Stillwell believed had an interest in the CNMI, emails with updates concerning various issues relating to the CNMI.

information for his superiors. The misdemeanor charge brought by the United States reflects that.

### B. The Offense Conduct

These relevant facts are undisputed in this case: on December 12 and December 15, 2003, respectively, Mr. Stillwell was offered, received and accepted gifts from Mr. Abramoff. The gifts Mr. Stillwell received were (1) four tickets to attend the December 12, 2003 Washington Redskins vs. Tampa Bay Buccaneers professional football game at FedEx Field with a face value of $316; and (2) two tickets to attend the December 15, 2003 Simon & Garfunkel concert at the MCI Center, with a face value of $166. Ten months later, on October 27, 2004, Mr. Stillwell certified as true and correct to the best of his knowledge a Form 450 Confidential Financial Disclosure Report wherein he falsely stated that he did not receive any gifts from one source totaling more than $285. Mr. Stillwell received gifts from Mr. Abramoff totaling $482 -- $197 more than the stated limit for reporting on the Disclosure Report.

The admittedly illegal conduct giving rise to this proceeding contrasts starkly against the portrait of Mr. Stillwell's life. Indeed, it is difficult to imagine that Mr. Stillwell would have ever elected to make such a misstep if his life had not intersected with Jack Abramoff's, a person with whom he believed he had developed a legitimate and close friendship over the years. In spite of that, Mr. Stillwell accepts full responsibility for his actions, while expressing shame and embarrassment for them.

## II. Procedural Background

### A. Inquiry into Making a False Certificate or Writing and Roger Stillwell's Cooperation

Mr. Stillwell was in a position where many putative defendants choose to contest the investigation and prosecution, and hope to avoid any penalty or to limit it substantially. Instead,

when first confronted, Mr. Stillwell submitted himself to a lengthy interview with investigators and the Department of Justice. During this interview, he candidly and forthrightly detailed his knowledge of Mr. Abramoff, their friendship that continued while Mr. Stillwell was employed at the Department of Interior, and Mr. Stillwell's failure to report the gifts he received from Mr. Abramoff. He spoke with sincerity and without regard to consequence.

On June 27, 2006, the United States filed a single count misdemeanor Information against Mr. Stillwell, and on August 11, 2006, Mr. Stillwell entered a plea of guilty to 18 U.S.C. § 1018, Making a False Certificate or Writing. After entering his guilty plea in this matter, Mr. Stillwell submitted himself to an additional interview with various federal investigators and the Department of Justice, answering all questions and cooperating to the fullest extent possible. Since this time, though he had no obligation to do so, he readily agreed to submit himself to yet another interview with federal investigators, where he again answered all questions posed and cooperated to the fullest extent possible.

### B. The PSI Report and Guidelines Calculations

The PSI Report correctly calculates the USSG total offense level at 4, with a Criminal History Category I and a resulting guideline range of 0-6 months. The PSI Report contains no disputed content that is relevant to the sentencing calculation.[3]

### III. Sentencing Considerations

Under the authority of 18 U.S.C. § 3553(a), the Court shall impose a sentence sufficient, but not greater than necessary, to achieve the purposes set forth in that section. Of course, the

---

[3] However, the PSI Report does contain a typographical error. In paragraph 29, the PSI Report incorrectly lists Mr. Stillwell's age as 28 instead of 18. Undersigned counsel has contacted U.S. Probation Officer Suarez regarding this error and she has stated that she will bring corrected copies of the PSI Report to the January 9, 2007 sentencing.

sentencing guidelines provide advisory guidance to the Court in this assessment, but do not bind the Court's discretion. *See United States v. Booker*, 543 U.S. 220 (2005). A review of relevant § 3553(a) factors present in this case demonstrate that a sentence that can be served in the community is appropriate here.

### A. Roger Stillwell's Personal History and Characteristics

Mr. Stillwell has recently completed approximately 40 years of service to the federal government and the CNMI. Starting in 1964, Mr. Stillwell worked as a press secretary and legislative assistant for various Congressmen and Congressional Delegates from U.S. Territories. In 1984, Mr. Stillwell was hired by the elected CNMI Washington, D.C. Representative Froilan Tenorio. He worked as an employee of the CNMI as a writer and general staff advisor until 1994 when he became a paid consultant for then Governor Tenorio. From 1999 until he became the CNMI desk officer in 2001, Mr. Stillwell, as a temporary contract employee, was the manager of the $29.5 million Y2K program for U.S. Department of the Interior, Office of Insular Affairs.

In addition to his commendable work record, Mr. Stillwell is a devoted family man. He has been married to his wife, Bette Jane, for 37 years and has 3 adult sons, with whom he shares a close relationship, and 5 grandchildren. Mr. Stillwell's family has been extremely supportive of him during this difficult time.

One of the very real challenges Mr. Stillwell is facing is providing for his family in the wake of his forced retirement. Between his wife's 10-month-a-year job working for the Montgomery County Public School system and Mr. Stillwell's social security and federal pension payments, it is difficult to pay for their mortgage and other necessary living expenses.

In addition, Mr. Stillwell is not in good health. He has been diagnosed with heart failure

caused by an excessive buildup of water in the body and has a leaky heart mitral valve which will likely need replacing in the next year. Moreover, Mr. Stillwell's doctors recently discovered that he is suffering from Atrial Fibrillation, a problem with his heart's rhythm. Medication was immediately prescribed on a daily basis to ensure that he does not develop a blood clot which could lead to a stroke. The primary effect of this is a decreased flow of blood to his system and periodic heart pain. He is also blind in his right eye and has severe and painful osteoarthritis of the right knee and other joints which creates stiffness and makes it difficult to walk more than short distances. Mr. Stillwell takes a variety of daily medications for his medical problems.

### B. Roger Stillwell's Rehabilitation

Mr. Stillwell is an honest and good man. Mr. Stillwell has fully accepted responsibility for his misconduct and has taken every step within his power to right his wrong, including cooperating with the government's investigation. It has been approximately one year since he first elected to cooperate with the government, and during that time Mr. Stillwell has had constant occasion for reflection upon the jeopardy to his liberty to which he has exposed himself and his family. Now, having accepted responsibility and cooperated with and assisted the government, Mr. Stillwell has begun to rebuild his life.

### C. The Public Interest

Mr. Stillwell has spent the last year living under the cloud of anxiety of this matter and has spent much of the past 5 months without employment after his forced retirement, struggling to provide for his family and striving to regain work. He has suffered the embarrassment and shame of a criminal conviction and the disgrace of confronting family, friends and colleagues with his misconduct. He has been publicly humiliated and is forever linked to Jack Abramoff, a national example of excess and corruption. These factors are alone sufficient to deter Mr.

7

Stillwell and others similarly situated from further criminal conduct. For that reason, this Court can be confident that a sentence that avoids incarceration will achieve the purposes set forth in § 3553(a).

### D. Recommendation

The foregoing underscores the appropriateness of a sentence of probation and such a sentence finds support in the advisory sentencing guidelines. Mr. Stillwell respectfully submits that a term of probation of no more than six months would provide adequate supervision in this case. Mr. Stillwell, who entered his guilty plea on August 11, 2006, immediately reported to the Probation Office and has complied with all of its requirements. Therefore, as the conditions of Mr. Stillwell's release pending sentencing are akin to a term of probation, and given that Mr. Stillwell has already lived under these conditions for almost 5 months in anticipation of his sentencing, we would request a sentence of no more than six months of probation. As noted above, the United States does not contest this recommendation and will leave the determination to the discretion of this Court.

## IV. Conclusion

When a person violates the law, that person confronts another choice. Roger Stillwell chose to admit his wrongdoing and to undertake the most meaningful effort available to him to begin making up for the offense. Upon consideration of his personal history, his deep and genuine remorse and his value as a member of his family and community, Mr. Stillwell respectfully requests that the Court sentence him to a term of probation not to exceed 6 months.

Respectfully submitted,

/s/

Justin P. Murphy
D.C. Bar No. 477718
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
202-624-2500

Counsel for Roger G. Stillwell

9

## CERTIFICATE OF SERVICE

      I hereby certify that on this 22nd day of December 2006, I caused one copy of Defendant Roger Stillwell's Memorandum in Aid of Sentencing to be served by facsimile and first class mail on the following:

Elizabeth Suarez
Probation Office
United States District Court
for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001
(f) 202-273-0242

Armando Bonilla
U.S. Department of Justice, Criminal Division
Public Integrity Section
The Bond Building
1400 New York Avenue, N.W.
Washington, D.C. 20005
(f) 202-524-3003

Dated: December 22, 2006

                                                                                     Justin P. Murphy